Filed 2/24/22  P. v. Carrillo CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>REYES JAMES CARRILLO,<br><br>     Defendant and Appellant. | F080452<br><br>(Super. Ct. No. 19CR-03377B)<br><br><br>**OPINION** |

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Merced County.  Jeanne E. Schechter, Judge.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup>     Before Poochigian, Acting P. J., Detjen, J. and Snauffer, J.

Appellant Reyes James Carrillo was convicted by jury of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)). In addition, the jury found true enhancements alleging Carrillo committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)), and that Carrillo had inflicted great bodily injury upon the victim in the commission of the offense (§ 12022.7, subd. (a)). Carrillo admitted he had suffered two prior strikes (§§ 667, subds. (a)(1) & (b)-(j), 1170.12, subd. (b)) and two prior serious felony convictions (§ 667, subd. (a)(1)). He was sentenced to an aggregate prison term of 25 years to life, plus 20 years.

On appeal, Carrillo contends there is insufficient evidence to support the criminal street gang enhancement applied to his sentence. On October 8, 2021, following submission of the parties' appellate briefs, the Governor signed Assembly Bill No. 333 into law (2021-2022 Reg. Sess.) (Assembly Bill No. 333), amending the Street Terrorism Enforcement and Prevention Act (§ 186.22). The parties submitted supplemental briefing on the effect of Assembly Bill No. 333 upon Carrillo's sentence. The People concede Assembly Bill No. 333 applies retroactively to Carrillo's judgment of conviction which is not yet final, and that Carrillo is entitled to relief under the ameliorative provisions of the new law. We agree and will therefore reverse the criminal street gang enhancement.

## PROCEDURAL HISTORY

On October 2, 2019, the Merced County District Attorney's Office filed a first amended information charging Carrillo with assault with a deadly weapon (§ 245, subd. (a)(1)). The information further alleged Carrillo had committed the assault for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)), that he had inflicted great bodily injury in the commission of the offense

---

[1] All further undefined statutory citations are to the Penal Code.

2.

(§ 12022.7, subd. (a)), and that he suffered two prior strikes (§§ 667, subds. (a)(1) & (b)-(j), 1170.12, subd. (b)) and two prior serious felony convictions (§ 667, subd. (a)(1)).

On November 1, 2019, a jury found Carrillo guilty of the charged offense and found true the great bodily injury and criminal street gang enhancements. Carrillo admitted the prior strike and prior serious felony conviction allegations.

On December 13, 2019, the trial court sentenced Carrillo to state prison for 25 years to life, plus 20 years.[2] Carrillo's sentence was imposed consecutive to a 55-years-to-life sentence he was already serving in case No. 17CR-05106B.

On December 17, 2019, Carrillo filed a timely notice of appeal.

## FACTUAL HISTORY

### The People's Case

On May 18, 2019, Alejandro Marin-Moreno, a correctional officer with the Merced County Sheriff's Office, was working at the Merced County jail. At approximately 7:00 p.m., Moreno heard someone on three block yelling and calling for help. He observed an assault taking place while looking at surveillance cameras. Moreno ran to three block and radioed a code to other officers indicating that a physical assault was in progress.

The yelling was coming from cell four on three block. Cell four housed seven inmates, including: Carrillo, Steven Rincon, Daniel Jones, Joseph Alvarez, and three other men.

Moreno observed Carrillo standing in between two bunks, breathing heavily, and staring at Alvarez. Alvarez was standing in the corner of the cell, staring back at Carrillo. Alvarez's shirt and skin were covered in blood.

---

[2] The court declined Carrillo's motion to strike his prior strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and his request to strike the prior serious felony convictions pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.).

Moreno removed and separated the inmates. He escorted Alvarez to the medical office so that Alvarez could receive treatment for his injuries. Alvarez had sustained multiple puncture wounds to his chest and upper extremities and a fractured rib. He had also suffered life-threatening injuries, including a punctured lung.

When Moreno returned to the fourth cell, he noticed Carrillo had blood spatter on his boxers, shorts, and shoes. Carrillo also had dried red stains on his hands. Jones had blood on his shoes.

Inside of the fourth cell, investigators found a large amount of blood on the floor, two makeshift weapons, and the number "14" and the letter "N" carved into the wall. One of the weapons—a shank—was recovered from the toilet. The second weapon, which was similar to an ice pick, was found underneath a bunk.

Surveillance video depicting the incident showed that Carrillo and Jones had attacked Alvarez. Seconds after Carrillo began his attack, Jones joined him. At one point, Jones ran towards the toilet and placed something inside of it. Carrillo appeared to place something under one of the bunks. Seconds later, correctional officers arrived.

**The Gang Evidence**

Moreno testified that the blocks at the jail house different types of inmates who are separated for security purposes. Norteño gang members are housed in three block.

Stephen Odom, a police officer with the City of Merced, testified as an expert on Norteño criminal street gangs. According to Odom, the Norteño criminal street gang is comprised of 1,066 documented members in Merced County and it is the largest gang in the county.

The Norteño gang functions as a three-tier system. The highest tier of the organization is comprised of the Nuestra Familia prison gang. The second tier of the gang consists of "insol" members and northern structure members, who receive orders from the Nuestra Familia. The bottom tier is comprised of Norteño street gang members, who take orders from the insol members and northern structure gang members.

4.

Norteños advance within the larger organization by putting in work for and showing dedication to the gang. This occurs by committing crimes, both inside and outside of prison, over a number of years.

According to Odom, the Norteños operate in at least 12 subsets in Merced County. Some of these subsets include the Loughborough Locs or LBL, Vario Le Grand, Rebels Before Locs or RBL, and Dead End Locs or DEL. Each of these subsets operate under the direction and control of the Nuestra Familia and all of the subsets commit crimes together.

Odom explained that Norteños characteristically wear the color red and wear clothing affiliated with the Nebraska Cornhuskers, the University of Nevada, Las Vegas Rebels, and the San Francisco 49ers sports teams. They also use common signs and symbols, including: the Huelga bird; four dots over two parallel lines, which corresponds to the number "14" in the Mayan numerical system; and the numbers "14," "X4," and "X14."

The Norteño subsets work together to benefit the gang by committing crimes that will instill fear in the community and command respect from rival gangs and law enforcement. The Norteños rivals include the Sureños, the Mexican Mafia, Crips, Riders, the Aryan Brotherhood, and other white gangs.

The primary activities of the Norteños within Merced County include murder, assaults, shootings, firearms possession, narcotics sales, robbery, carjacking, home invasion, car theft, burglary, and pimping. Odom opined that the Norteños have engaged in a pattern of criminal gang activity to this effect.

As to the evidence establishing a " 'pattern of criminal gang activity,' " (§ 186.22, subd. (e)), the parties entered into the following stipulation: "[O]n June 11th of 2017, defendant Reyes James Carrillo committed a crime … in association with Steven Patrick Rincon, … and Alfonso Lozaro Martinez …. As a result of that incident on June 11th of 2017, all three were convicted of crimes listed in Penal Code section 186.22(e)(1)

5.

through 25, for offenses falling within the definition of a pattern of criminal gang activity." In addition to these crimes, the prosecutor adduced evidence of other crimes, which he argued could be used to establish the gang's pattern of criminal gang activity, including: a robbery committed by Daniel Jones on April 7, 2018, Steven Rincon's February 28, 2015 crimes of assault with a firearm on a police officer and felon in possession of a firearm, and Carrillo's September 30, 2015 conviction for criminal threats with a gang enhancement.

With respect to Jones, Odom opined he was an active Norteño gang member based upon his prior contacts with Jones, self-admissions by Jones, photographs depicting Jones with other active gang members displaying gang signs, his housing at the county jail, and the clothing Jones had previously worn. Merced County Police Officer Raymond Valadez testified Jones had admitted he was a member of the Loughborough Locs subset of the Norteños.

Odom further opined that Rincon was also an active Norteño gang member. Odom personally knew Rincon and had previously testified as a gang expert in a case pending against Rincon in May 2019. Rincon had several gang-related tattoos, including "N-S" on his right cheek, the Huelga bird above his right eye, "209" on the right side of his neck, the Mayan symbol for 14 near his left eye, "Cali" across his abdomen, and various tattoos on his hands. During a prior contact with Rincon, Odom observed Rincon wearing gang-related clothing.

Finally, as to Carrillo, Odom opined Carrillo was also an active Norteño gang member. Carrillo had multiple gang-related tattoos, including the letters "L" and "B" on the right side of his face, a reference to Los Banos; the Mayan symbol for 14 on the left side of his face; the Huelga bird on his right hand; and various tattoos on his hands which reference the number "14," the 209 area code, and the letters "N-S" with a slash through the S.

6.

In April 2015, Carrillo was convicted of the crime of criminal threats with the intent to terrorize (§ 422) with a criminal street gang enhancement (§ 186.22, subd. (b)(1)(B)). Odom opined that Carrillo was an active Norteño gang member as of April 2015, and that he was an active gang member on May 18, 2019, when the instant offense was committed. Odom based his opinion on the circumstances of the current offense, Carrillo's tattoos, and Carrillo's jail classification.

Based upon a hypothetical scenario mirroring the facts of the instant case, Odom opined that an assault similar to the one committed by Jones and Carrillo was committed for the benefit of, at the direction of, and in association with a criminal street gang. Odom opined the crime is in association with a criminal street gang because two Norteño gang members worked together to attack another Norteño gang member. The crime occurred at the direction of the Nuestra Familia because the Nuestra Familia makes decisions related to punishment among Norteño gang members within the jail. Odom explained that assaults on Norteño gang members are a common form of punishment for a violation of the gang's rules.

Odom further opined that such an assault benefits the individual gang member perpetrating the crime because it shows a member's loyalty to the gang. It benefits the gang as well because it shows that the gang's members are willing to commit violent acts on fellow gang members that violate the gang's rules. The gang members' actions instill fear and show that gang members are willing to commit violent acts, despite any consequences, to promote and protect the gang.

*The Defense's Case*

Defense counsel conceded that all of the men in cell four were Norteños. However, defense counsel argued Carrillo and Jones did not act together as gang members in committing the assault; there was also no evidence the attack on Alvarez had been planned. Further, there was no evidence showing the assault on Alvarez would elevate Carrillo's status. Defense counsel further argued the prosecutor had failed to

7.

present any evidence showing Carrillo was acting at the direction of any higher authority within the gang.

## DISCUSSION

I. **Substantial Evidence Supported the Gang Enhancement Based Upon the Law as it Stood at the Time of Carrillo's Trial**

In his opening brief, Carrillo argues the evidence adduced at trial was insufficient to support the conclusion that he committed the assault on Alvarez for the benefit of, at the direction of, or in association with a criminal street gang. We conclude substantial evidence supported the enhancement based upon the law as it existed at the time of Carrillo's trial.

### A. Relevant Legal Principles

" ' "We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. [Citation.] Thus, we presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." [Citation.]' [Citation.] 'The question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the underlying enhancement beyond a reasonable doubt.' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1197, disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) " 'If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Miranda* (2016) 2 Cal.App.5th 829, 834.) We do not reweigh the evidence or reevaluate witness credibility. (*Ibid*.)

Here, Carrillo challenges the sufficiency of the evidence supporting the gang enhancement applied to his sentence. To prove a gang enhancement, the prosecution must prove both "prongs to the gang enhancement under section 186.22, subdivision (b)(1). 'First, the prosecution is required to prove that the underlying

8.

felonies were "committed for the benefit of, at the direction of, or in association with any criminal street gang." [Citation.] Second, there must be evidence that the crimes were committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." ' " (*People v. Perez* (2017) 18 Cal.App.5th 598, 606-607, quoting *People v. Rios* (2013) 222 Cal.App.4th 542, 561.)

### B. Analysis

Carrillo does not challenge the nature or sufficiency of the evidence showing he and Jones are active Norteño gang members, nor do we independently find the evidence insufficient to support this conclusion. Carrillo's sole contention is that the evidence failed to support the conclusion that the assault on Alvarez was gang related within the meaning of the section 186.22, subdivision (b)(1) enhancement. His assertion is without merit.

"The first prong [of the enhancement]… may be established with substantial evidence that two or more gang members committed the crime together, unless there is evidence that they were 'on a frolic and detour unrelated to the gang.' " (*People v. Weddington* (2016) 246 Cal.App.4th 468, 484, quoting *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198.) Here, the prosecutor adduced evidence showing Carrillo and Jones, both Norteños, worked together to commit the assault on Alvarez, who was himself an active Norteño.

Surveillance video of the incident shows Jones joining the attack on Alvarez soon after it had begun. During the attack, Jones and Carrillo stabbed Alvarez repeatedly. They disposed of their makeshift weapons seconds before officers responded to the incident. From this evidence, the jury could reasonably infer Carrillo and Jones had planned the attack on Alvarez and that they had assisted one another *as gang members* during the commission of the offense. A two-on-one attack would bolster the chances of completing the crime successfully by allowing Carrillo and Jones to handle unexpected

9.

contingencies that may arise during the assault.  (See *People v. Albillar* (2010) 51 Cal.4th 47, 61.)

While it is conceivable that two Norteños may come together to assault another Norteño for reasons unrelated to the gang, the evidence supports the conclusion that the assault on Alvarez was gang related.  Based upon his knowledge and experience, Odom testified that not only are assaults one of the primary activities of the Norteños, Norteños discipline their own members within correctional institutions by carrying out directed hits.

According to Odom, the Nuestra Familia controls all activity among its members within prisons and jails.  And, assuming a hypothetical mirroring the facts of the instant case, Odom opined that Carrillo and Jones were likely acting on orders from the Nuestra Familia because the attack occurred within a custodial facility on a fellow Norteño. Odom further opined the brazenness of the crime—which was recorded on surveillance video—would benefit the perpetrators of the attack by showing loyalty to the gang, and it would benefit the gang by instilling fear in other Norteños, dissuading them from committing infractions.  The jury was entitled to rely on this testimony in determining whether the assault was gang related. (See *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930 ["[i]t is well settled that expert testimony about gang culture and habits is the type of evidence a jury may rely on to reach a verdict on a gang-related offense or a finding on a gang allegation"].)

Although there was no direct evidence supporting Odom's opinion, such as an admission by Carrillo that he was acting on a directive, circumstantial evidence supported the inference that the assault was gang related.  Specifically, the setting where the assault occurred and the coordination between Carrillo and Jones during the attack. Thus, contrary to Carrillo's assertions, the evidence was sufficient to prove the first prong of the section 186.22, subdivision (b)(1) enhancement.  The jury could reasonably infer the assault was " ' "committed for the benefit of, at the direction of, *or* in association with

any criminal street gang." ' " (*People v. Perez*, *supra*, 18 Cal.App.5th at pp. 606-607, italics added.)

The fact that Carrillo and Jones came together to commit the assault on Alvarez also satisfies the second prong of the criminal street gang enhancement, that the "defendant commit the gang-related felony 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " (*People v. Albillar*, *supra*, 51 Cal.4th at p. 64.) "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id*. at p. 68.) Thus, both prongs of the section 186.22, subdivision (b)(1) enhancement were proven.

Carrillo contends *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*) and *In re Frank S.* (2006) 141 Cal.App.4th 1192 (*Frank S.*) compel a contrary conclusion. However, *Ramon* and *Frank S.* are distinguishable from the instant case.

In *Ramon*, a police officer stopped two gang members who were in a stolen vehicle in known gang territory. (*Ramon*, *supra*, 175 Cal.App.4th at p. 847.) Police officers found an unregistered firearm in the vehicle. (*Ibid*.) Among other offenses, the defendant was charged with a criminal street gang enhancement (§ 186.22, subd. (b)(1)). (*Ramon*, at p. 848.)

The prosecution's gang expert opined the defendant's crimes had benefited his gang based upon the following: (1) the defendant and his codefendant were members of the same gang; and (2) the crime had occurred in gang territory. (*Ramon*, *supra*, 175 Cal.App.4th at p. 851.) The expert's opinion "was based on his belief that because the gun and the stolen vehicle could be used to facilitate the commission of a crime, and the [gang] commit[s] crimes, the two must have been acting on behalf of the [gang]." (*Id*. at p. 849.)

11.

This court vacated the jury's true finding on the gang enhancement, observing the gang expert's opinion was based upon speculation rather than evidence.  (*Ramon*, *supra*, 175 Cal.App.4th at pp. 849, 853.)  We explained, evidence of "two gang members in possession of illegal or stolen property in gang territory" does not mean that they were "acting to promote a criminal street gang."  (*Ramon*, at p. 853.)  This court noted the "analysis might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang," however, that did not occur.  (*Ibid*.)

In *Frank S.*, following a traffic stop, a minor told police that he carried a concealed knife for protection from a rival gang.  (*Frank S.*, *supra*, 141 Cal.App.4th at p. 1195.)  Among other crimes, he was charged with carrying a concealed dirk or dagger (§ 12020, subd. (a)(4)) with a criminal street gang enhancement (§ 186.22, subd. (b)(1)).  (*Frank S.*, at p. 1195.)  The prosecution's gang expert opined that the minor's possession of the knife benefited his gang by providing members of the gang with protection.  (*Id*. at pp. 1195-1196.)  Following a contested hearing, the court found true a criminal street gang enhancement.  (*Ibid*.)  This court reversed the enhancement, finding no evidence was presented showing "the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense."  (*Id*. at p. 1199.)

As shown in *Ramon* and *Frank S.*, a gang enhancement requires some evidence connecting the defendant to the criminal activity of the gang beyond the mere fact that the defendant and his compatriot are gang members who happened to commit a crime. We are persuaded, however, that the instant case does not suffer from the same evidentiary gaps apparent in both *Ramon* and *Frank S*.

The gang experts in *Ramon* and *Frank S.* opined the defendant and the minor committed their respective crimes for the benefit of their gang.  Here, the prosecutor theorized Carrillo and Jones's attack on Alvarez was committed for the benefit of, at the direction of, and in association with the Norteños.  Even if there were insufficient

12.

evidence supporting the first two grounds, there was ample evidence the assault was committed in association with the Norteños.

As discussed, the jury could reasonably infer Carrillo had acted in association with another gang member, "with the specific intent to promote, further, or assist in any criminal conduct" by his co-assailant. (§ 186.22, subd. (b)(1); see *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1333 [evidence sufficient to support gang enhancement where "defendant, an admitted gang member sporting gang tattoos, actually committed the robbery with a gang confederate]; see also *People v. Morales*, *supra*, 112 Cal.App.4th at p. 1198 ["the jury could reasonably infer the requisite association from the very fact that [the] defendant committed the charged crimes in association with fellow gang members"].) Carrillo's assertions to the contrary are unpersuasive.

## II. The Criminal Street Gang Enhancement Following the Enactment of Assembly Bill No. 333

In supplemental briefing, Carrillo argues that the criminal street gang enhancement must be reversed as a result of changes made to the law following the enactment of Assembly Bill No. 333. The People concede Carrillo is entitled to relief, and we agree.

### A. Assembly Bill No. 333

Assembly Bill No. 333 was signed into law at a regular session of the Legislature and therefore went into effect on January 1, 2022. (Cal. Const., art. IV, § 8; Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865 [" ' "Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner." ' "].)

Assembly Bill No. 333, the STEP Forward Act of 2021 (the STEP Forward Act), amends the STEP Act in multiple aspects. Our analysis of several of these substantive

13.

changes which are relevant to Carrillo's conviction is fully detailed below. However, to summarize, those changes are as follows.

First, the STEP Forward Act amended the definition of a " 'criminal street gang,' " requiring proof that the gang is an *organized* association, whose members *collectively* engage in, or have engaged in, a pattern of criminal activity (§ 186.22, subd. (f)). Second, it amended the definition of what constitutes a " 'pattern of criminal gang activity' " by requiring the last offense to have occurred within three years of the date the current offense is alleged to have occurred and that the offenses commonly benefit a criminal street gang in a manner that is more than reputational (*id*., subd. (e)(1)). Third, it narrowed the list of offenses that may be used to establish a pattern of criminal gang activity (compare former § 186.22, subd. (e)(1)-(33) with § 186.22, subd. (e)(1)(A)-(Z)). Fourth, it prohibits use of the currently charged offense to establish a pattern of criminal gang activity (§ 186.22, subd. (e)(2)). Fifth, it defines "to benefit, promote, further, or assist" throughout section 186.22 to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational." (*Id*., subd. (g).) And finally, the STEP Forward Act adds section 1109 to the Penal Code, requiring bifurcation of gang enhancements charged under section 186.22, subdivision (b) or (d) to be tried separately from the underlying charges upon request from the defense. (Stats. 2021, ch. 699, § 5.) Section 1109 also requires the substantive offense of active participation in a criminal street gang (§ 186.22, subd. (a)) to be tried separately from all other counts that do not require gang evidence as an element of the crime.[3]

---

[3]     Section 1109 is not at issue in the current case. Consequently, we do not address it. We emphasize that our conclusion in part II.B, *post*, that Assembly Bill No. 333's amendments to section 186.22 apply retroactively to all nonfinal convictions should not be construed to mean that we conclude section 1109 is retroactive, nor have the People conceded this point.

14.

### 1. The Amended Definition of a "Criminal Street Gang"

Under former section 186.22, subdivision (f), a " 'criminal street gang' " was defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity."

Assembly Bill No. 333 redefined " 'a criminal street gang' " to mean "*an ongoing, organized association* or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision (e), having a common name or common identifying sign or symbol, and *whose members collectively engage in, or have engaged in, a pattern of criminal gang activity.*" (§ 186.22, subd. (f), italics added.) As can be seen, section 186.22 now requires the prosecution to adduce evidence showing the gang is an "organized association" and that the gang's members have "collectively" engaged in a pattern of criminal gang activity.

### 2. The Amended Definition of a "Pattern of Criminal Gang Activity"

A " 'pattern of criminal gang activity' " was previously defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." (former § 186.22, subd. (e).) "The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses." (*People v. Valencia* (2021) 11 Cal.5th 818, 829.)

Following the enactment of Assembly Bill No. 333, the definition of a " 'pattern of criminal activity" has been amended as follows: " 'pattern of criminal gang activity' " means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of, two or more of the following offenses [§ 186.22, subds. (A)-(Z)], provided at least one of these offenses occurred after the effective date of this chapter, and the last of those offenses occurred within three years of the prior offense *and within three years of the date the current offense is alleged to have been committed*, the offenses were committed on separate occasions or by two or more *members [of the gang]*, *the offenses commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational*." (§ 186.22, subd. (e)(1), italics added.)

Thus, to prove the "pattern of criminal gang activity," the prosecution must now adduce evidence showing: (1) the last predicate offense occurred within three years of the currently charged offense; (2) the predicate offenses were committed by members of the gang who acted collectively; (3) the offenses commonly benefit a criminal street gang, and that benefit is more than reputational. Subdivision (g) of section 186.22 provides the following examples of a common benefit that is more than reputational: "financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." By contrast, evidence of a reputational benefit would include an expert's opinion that the commission of a particular violent crime would elevate a gang member's reputation, which inures to the gang's benefit by instilling fear into the community and rival gang members. (See, e.g., *People v. Albillar* (2010) 51 Cal.4th 47, 63.)

Our Supreme Court had previously held that the current offense could be used to prove the existence of a pattern of criminal gang activity. (*People v. Gardeley* (1996) 14 Cal.4th 605, 625, disapproved on another ground by *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13; accord, *People v. Loeun* (1997) 17 Cal.4th 1, 10.) However, Assembly

Bill No. 333 prohibits use of the currently charged offense to prove the pattern of criminal gang activity. (§ 186.22, subd. (e)(2).)

Additionally, seven offenses were removed from the list of crimes that may qualify as those supporting a pattern of criminal gang activity, including: looting (§ 463); felony vandalism (§ 594, subd. (b)(1)); felony theft of access card or account information (§ 484e); counterfeiting, designing, using or attempting to use an access card (§ 484f); felony fraudulent use of an access card or account information (§ 484g); unlawful use of personal identifying information to obtain credit, goods, services, or medical information (§ 530.5); and wrongfully obtaining Department of Motor Vehicles documentation (§ 529.7).

## B. Assembly Bill No. 333 Retroactivity Applies

"Generally, statutes are presumed to apply only prospectively. [Citation.] However, this presumption is a canon of statutory interpretation rather than a constitutional mandate. [Citation.] Accordingly, 'the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication.' [Citation.] Courts look to the Legislature's intent in order to determine if a law is meant to apply retroactively." (*People v. Frahs* (2020) 9 Cal.5th 618, 627.)

"When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted (*Brown*), citing *In re Estrada* (1965) 63 Cal.2d 740, 742-748 (*Estrada*).) In *Brown,* our Supreme Court explained that *Estrada* "articulate[d] the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*Brown*, at p. 324; accord, *People v. Conley* (2016) 63 Cal.4th 646, 656 (*Conley*).)

*Estrada's* rationale is based on the principle that, " '[o]rdinarily, when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest.' " (*People v. Nasalga* (1996) 12 Cal.4th 784, 791 (plur. opn. of Werdegar, J.) (*Nasalga*).) As *Estrada* explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.… [T]o hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada*, *supra*, 63 Cal.2d at p. 745; see *Conley*, *supra*, 63 Cal.4th at p. 656 ["when the Legislature determines that a lesser punishment suffices for a criminal act, there is ordinarily no reason to continue imposing the more severe penalty, beyond simply ' "satisfy[ing] a desire for vengeance" ' "].)

In sum, "*Estrada* stands for the proposition that, 'where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.' " (*Nasalga*, *supra*, 12 Cal.4th at p. 792; accord, *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.)

The People concede that *Estrada's* presumption of retroactivity applies here. Although Assembly Bill No. 333 does not guarantee a reduced punishment, it increases the evidentiary showing required for a conviction upon the substantive gang offense and the penalty enhancement. " '[A] defendant is entitled to the benefit of an amendment to an enhancement statute, adding a new element to the enhancement, where the statutory change becomes effective while the case was on appeal, and the Legislature did not

18.

preclude its effect to pending case.' " (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344, citing *People v. Figueroa* (1993) 20 Cal.App.4th 65, 68.)

As the People observe, *Estrada* has been applied to statutes governing penalty enhancements under analogous circumstances. (*Nasalga, supra*, 12 Cal.4th at p. 792 ["[t]he rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses"]; (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301 [amendments to death penalty circumstances applied retroactively to defendants whose crimes were committed before the change if their conviction was not yet final]; *People v. Millan* (2018) 20 Cal.App.5th 450, 455-456 [amendment removing defendant's prior convictions from list of convictions qualifying for imposition of enhancement under Health & Saf. Code, § 11370.2, subd. (c) applied retroactively]; *People v. Figueroa*, *supra*, 20 Cal.App.4th at pp. 69-71 [amendment adding requirements for imposition of drug trafficking enhancement applied retroactively].)

To rebut *Estrada's* inference of retroactivity, the Legislature must clearly signal "its intent to make the amendment prospective, by the inclusion of either an express saving[s] clause or its equivalent." (*Nasalga*, *supra*, 12 Cal.4th at p. at p. 793.) Neither the text nor the legislative history of amended section 186.22 clearly indicate that the Legislature intended that the *Estrada* rule would not apply. We therefore accept the People's concession.

### C. Analysis

It is undisputed that Carrillo's case is not yet final. (*People v. Smith* (2015) 234 Cal.App.4th 1460, 1465 ["[a] judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari [with the United States Supreme Court] have expired"].) The People concede that as a result of changes made to the law following the enactment of Assembly Bill No. 333, Carrillo is entitled to reversal of the gang enhancement applied to his sentence. We agree. There is insufficient evidence upon this record to support the enhancement under amended section 186.22.

Although the following is not an exhaustive list, here are the issues we have observed solely with respect to the predicate offenses.  First, there is insufficient evidence showing that the subjects of the predicate offenses committed offenses that commonly benefited the gang, and that the benefit of those offenses was more than reputational. (§ 186.22, subd. (e)(1).)  For example, the parties' stipulation that on June 11, 2017, Carrillo committed a crime in association with Rincon and Martinez provides virtually no information about their crime and whether it commonly benefited the gang in a manner that is more than reputational.  The stipulation was necessarily based upon the law as it existed at the time of trial.  Thus, the existing record does not permit us to conclude their crime satisfies the heightened evidentiary requirements under the STEP Forward Act.

Second, two of the crimes used to establish the predicate offenses occurred more than three years before the charged offense (see § 186.22, subd. (e)(1).)  Steven Rincon's February 28, 2015 crimes of assault with a firearm on a police officer and felon in possession of a firearm and Carrillo's September 30, 2015 conviction for criminal threats with a gang enhancement are no longer qualifying predicate offenses.

Excluding evidence of these offenses, and unable to refer to the currently charged offense as one of the qualifying predicates (§ 186.22, subd. (e)(2)), we are compelled to accept the People's concession that the existing record is insufficient to support the heightened evidentiary requirements set forth by amended section 186.22 following the enactment of Assembly Bill No. 333.  As a result, the criminal gang enhancement applied to Carrillo's sentence must be reversed.  However, that does not leave the People without relief.

"Double jeopardy forbids retrial after a reversal due to insufficient evidence to support the verdict." (*In re D.N.* (2018) 19 Cal.App.5th 898, 902.)  However, double jeopardy is not implicated when the prosecution makes its case under the law as it stood at trial. (*Ibid.*)  "Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the

reviewing court does not treat the issue as one of sufficiency of the evidence." (*People v. Figueroa*, *supra*, 20 Cal.App.4th at p. 72.) Here, because the prosecutor adduced ample evidence supporting the criminal street gang enhancement based upon the law as it stood at the time of Carrillo's trial, the People are not foreclosed from retrying the enhancement upon remand.

## DISPOSITION

The criminal street gang enhancement applied to Carrillo's sentence is reversed. The matter is remanded back to the trial court for further proceedings. The People shall have 60 days from the date of the remittitur in which to file an election to retry Carrillo on this enhancement. If the People elect not to retry him, the trial court shall modify the judgment by striking the enhancement, and shall resentence Carrillo accordingly. Following the conclusion of proceedings, the court shall amend the abstract of judgment in a manner consistent with this disposition and forward copies of the amended abstract to the appropriate law enforcement and custodial officials. In all other respects, the judgment is affirmed.

21.